# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

---

## Estate of Eber Beaumont, Deceased.  Appeal of Rhinewalt S. Beaumont and Margaret B. Lapp.

*Wills—Trusts and trustees—Discretionary power.*

Testator gave half of his estate to his executor in trust, to devote as much of the principal and income thereof to the maintenance of testator's son, and her children, as he chose.  He further expressly declared that the executor should not be held accountable to any of the children of the son, for any part of the trust property which he might in his discretion pay over or convey to the son during the latter's lifetime.  *Held*, (1) that the trust was a valid one, and should be sustained; (2) that the executor could not be surcharged after the death of the son with large payments of principal to the son during the latter's lifetime.

Argued Feb. 6, 1900.  Appeal, No. 361, Jan. T., 1899, by Rhinewalt S. Beaumont et al., from decree of O. C. Chester Co., dismissing exceptions to auditor's report.  Before GREEN, C. J., McCOLLUM, MITCHELL, DEAN and BROWN, JJ.  Affirmed.

Exceptions to auditor's report.

Mary E. Beaumont, widow, and Margaret E. Beaumont (now Lapp) and Elbert W. Lapp, guardian of Rhinewalt S. Beaumont, children of Theodore Beaumont, deceased, petitioned the court below for a citation to compel Rush Beaumont, executor of Eber Beaumont, deceased, to file an account.  The answer to the citation, to which a replication was filed, contained such

account, together with an account by him as trustee for Theodore Beaumont, under the decedent's will.

The net personal estate of Eber Beaumont, deceased, in the hands of Rush Beaumont, his executor, amounted to $14,566.97. One-half of this sum he held as trustee for his brother, Theodore Beaumont, under the terms of the trust created by the father's will.

In his account submitted as trustee, he claimed and was allowed credits for payments made to his cestui que trust, amounting to $9,102.98 in excess of the corpus of the entire trust estate. The cestui que trust died January 11, 1894.

The proceeding was referred to an auditor.

The auditor and the court below treated the power and authority of the trustee as unlimited, and held that the single purpose of the trust was to prevent the wife of the cestui que trust from acquiring any part of his share of his father's estate, and that the trustee could have handed to the cestui que trust, with safety, the entire trust estate.

Exceptions were filed to his report by the widow and children of Theodore Beaumont.

The supplemental report of the auditor, R. T. Cornwell, Esq., was as follows:

In compliance with the order of the court, referring back the report of the auditor, that he may advise the court of the grounds upon which he dismissed exceptions raising questions not passed upon in the report, your auditor respectfully represents as follows:

The only exceptions raising questions not passed upon in the body of the report are the second and third exceptions filed by C. Theodore Buchholz, attorney for Rhinewalt Beaumont, under date of April 29, 1898, which exceptions are as follows:

2. Under the terms of the will of decedent a trust was created for the purpose of maintenance of Theodore Beaumont and his children; that the trustee was limited in his powers to payments, which were properly maintenance of Theodore Beaumont, or maintenance and education of Theodore Beaumont's children, and any discretionary power was only with reference to the uses and purposes of the trust, to wit: maintenance of cestui que trust; therefore, the auditor erred in considering all

transactions which show or evidence payments either made to or by the cestui que trust, without regard as to whether they were applied under the purposes of the trust.

3. The trustee's account, as found by the auditor, does not distinguish any payments made for the purposes and uses of the trust, but shows, however, that many, if not all, of the payments were for other purposes, to wit: payments of cash in large amounts, payments of liquidated debts and taking up notes, lawyers' fees, and also a large balance due by the cestui que trust to trustee as per settlement, and in this he was in error.

And the tenth exception filed by Charles H. Pennypacker, Esq., as attorney for Mary E. Beaumont, administratrix of Theodore Beaumont, deceased, under date of April 30, 1898, which exception is as follows:

10. By the terms of the will of Eber Beaumont, deceased, the expenditures of Rush Beaumont, as trustee, were limited to the maintenance of his son Theodore and his children, and the expenditures here claimed by the accountant to have been made were improper and should have been disallowed by the auditor.

Mr. Buchholz is an attorney at law of the city of Philadelphia, and appears to have been taken into the case by Rhinewalt Beaumont after the report of your auditor was completed. At all events, he was not present at any of the hearings or arguments before the auditor. His exceptions were sent to the auditor by mail, and reached him on the last of the ten days for filing them. No hearing was asked or afforded, and, as the questions not passed upon in the report had not been raised at any of the hearings, he understood that the purpose of presenting them at that time was that the legal question as to the proper construction of this trust might be considered by the court if desired.

Mr. Pennypacker, who had theretofore represented both Mary E. Beaumont, the administratrix of Theodore Beaumont, deceased, and Rhinewalt Beaumont, in his tenth exception, intended to raise substantially the same questions as those presented by Mr. Buchholz in the latter's second and third exceptions.

Upon receipt of the order of the court, referring back the report, your auditor gave notice to all the counsel concerned

that the supplemental hearing under the order would take place at his office on November 9, 1898, at 10 o'clock A. M.

Pursuant to this notice there appeared before the auditor, at the time and place mentioned, Charles H. Pennypacker, Esq., for Mary E. Beaumont, administratrix of Theodore Beaumont, deceased; G. Albert Smyth, Esq., of Philadelphia, for Rhinewalt Beaumont, and Thomas W. Pierce, Esq., and William S. Windle, Esq., for Rush Beaumont, the accountant.

Mr. Smyth made the argument for the exceptors and Mr. Pierce for the accountant.

In the argument it was urged for the exceptors that the intention of the testator was to create a trust for the maintenance of Theodore Beaumont, and at his death for the maintenance and education of his children until they arrived at age, and that many of the payments for which credit had been allowed the trustee by the auditor in his report were not payments for maintenance in strict legal acceptation of that term.   On the other hand, it was urged for the accountant that the view accepted by both sides in all the hearings before the auditor for the taking of evidence, and in the former arguments before him, was the sound one, to wit: that the discretion reposed in the trustee by the testator, to pay over or convey to Theodore in his (Theodore's) lifetime, was practically unlimited, and the remainder to the children was what was left after this discretion had been exercised.

Eber Beaumont, by his will, gave all the residue of his estate, real and personal, to his son Rush Beaumont in fee, to have and to hold the one moiety thereof to his own use, and the other moiety thereof " in trust for the following uses and purposes, that is to say, to devote as much of the principal and interest or income thereof to the maintenance of my son Theodore Beaumont and his children as in the discretion of the said trustee shall be advisable for their good, and after the death of my son Theodore, and upon the arrival of his youngest son at the age of twenty-one years, then to pay over and convey whatever may remain of the said trust property to such of his children as shall then be living, and the lawful issue of such of them as dying before that time shall have left issue, the issue in such case taking the parent's share.   Provided, that after the death of my son Theodore Beaumont, and before the time of distribution as

aforesaid, the said trustee may devote any part of the said trust property, in his discretion, to the maintenance and education of his (Theodore's) children. And provided, further, that the said trustee shall not be held to account to the said children for any part of the said trust property which he may in his discretion pay over to or convey to my said son Theodore Beaumont in his lifetime, and, further, the said trustee is not to be held accountable to my said son Theodore, nor to his children, for any decrease of the principal of the said trust property by reason of the depreciation of real estate or otherwise. It is further provided that if my son Theodore shall survive his wife, Mary Elizabeth, daughter of Zimmerman Supplee, deceased, then the said one half before mentioned shall be conveyed to him and · his heirs for their use forever."

The single purpose of this trust was to prevent Theodore's wife from becoming endowed of what might be denominated Theodore's moiety of the estate. The provision that if Theodore shall survive his wife, then the trust shall terminate, and Theodore's moiety shall be conveyed to him in fee, is conclusive of this view. It is not a trust to protect the corpus of the estate for remainder-men, nor to protect the estate of a spendthrift or lunatic from himself or his creditors. It seems clear that the testator intended to give his son Theodore as unrestricted use of his share of the estate as was compatible with the purpose mentioned. To accomplish this he gave the trustee power to devote as much of the principal, interest or income to the maintenance of his son Theodore and his children as in the discretion of the trustee should be advisable for their good. At the death of Theodore the remainder-men were to receive only what might "remain," and the injunction is absolute and clear that the trustee was not to be held to account to the remainder-men for any part of the trust property which he might in his discretion pay over and convey to Theodore in his lifetime. The meaning of the will plainly is, that the trustee might with safety pay over to his brother any portion of the principal, interest or income without fear of accountability that he thought his brother might use to advantage, or which might be for his or his children's good. Indeed, your auditor is of opinion that the trustee might with safety and without accountability have paid over or conveyed to his brother Theodore his entire moiety

of the estate, the sounder view being, in his judgment, that the discretion to pay over or convey to Theodore in his life-time was unlimited.

All technical rules of construction must yield to the expressed intention of the testator, if that intent is legal: Reck's Appeal, 78 Pa. 432. It seems clear that the testator did not intend to hold the trustee to any narrow construction of the word main-tenance. He could turn over whatever he might think to be for the good of Theodore and his children. In such case the construction is not to be governed by a rigid adherence to one meaning of the technical word: Wright's Appeal, 89 Pa. 67. It was in the discretion of the trustee to determine what should be done in the way of maintaining Theodore and his family, and he might assist him in his business by way of such maintenance: Luckenbach v. Luckenbach, 175 Pa. 484.

There is no evidence of bad faith on the part of the trustee. And it is held in the case of Chew's Executors v. Chew, 28 Pa. 17, that where there is no bad faith in the exercise of discretionary powers given to trustees, a court in equity will not in general control them: 1 Sugden on Powers, 241; 2 Sugden on Powers, 511. In Williams's Appeal, 73 Pa. 284, AGNEW, J., says that while it is true that a chancellor will so control a trustee that he shall not disappoint the true intent and purpose of the donor, as gathered from the instrument containing the power, and will enforce its bona fide execution for the end designed, still when a testator to fulfil his own purpose confers an absolute discre-tion as to his property, it is his right to have the boon executed by his own trustees, and no court can interfere. The judge cites with approbation this language from Judge STRONG: "A court of equity does not interfere with a discretion reposed, except in cases of clear abuse, when the court can conclude that the donee of a power is acting in fraud of it. But when, as in your case, the trustee acts in accordance with his own best judgment, and in so doing follows the positive directions of his testator, it would be altogether unprecedented for a court to interfere and substitute its discretion for that invoked by the will:" Pulpress v. M. E. Church, 48 Pa. 204; Naglee's Estate, 52 Pa. 154, citing also Perry on Trusts, sec. 508, where it is said that when the discretion to be exercised is a matter of personal judgment, trustees alone can exercise these powers,

and courts cannot generally interfere to control mere personal judgments in personal matters; and citing further, Perry on Trusts, sec. 511, where it is said that if the trustees exercise their discretionary powers in good faith and without fraud or collusion, the court cannot review or control their discretion; citing also Hill on Trustees (ed. of 1846), p. 482, where it is said that as a court of equity will not generally assume the exercise of a discretionary power vested in trustees, so it will not interfere to control the trustees acting bona fide in the exercise of their discretion.

Your auditor thinks that the payments of cash, debts and counsel fees, and balance due on settlement between the trustee and the cestui que trust, referred to in the third exception filed by Mr. Buchholz, are all within the discretion reposed in the trustee by the will of the decedent. He recommends that the exceptions be dismissed.

The orphan's court dismissed exceptions to the report of the auditor.

*Errors assigned* were in dismissing exceptions to auditor's report.

*G. Albert Smyth*, with him *J. Frank E. Hause*, for appellants. —A trust for maintenance will be sustained and the court will see that the money is so applied: Wilson v. Turner, L. R. 22 Ch. Div. 521; Reck's App., 78 Pa. 432; Erisman v. Directors of the Poor, 47 Pa. 509; Greiner's Est., 10 Lancaster Bar, 118.

The trust created in the will of Eber Beaumont is active and not dry, for the trustee has a discretion as to maintenance, and a trustee is needed to support the remainders to the children of Eber Beaumont: Hemphill's Est., 180 Pa. 95.

This discretion lodged in the trustee is not absolute but is limited to the purpose of the will: Hill on Trustees (ed. of 1846), p. 482; Perry on Trusts, sec. 511; Sheetz's App., 82 Pa. 213; Hiestand v. Meyer, 150 Pa. 501; Waldo v. Caley, 16 Vesey, Jr. 206; Horde v. Earl of Suffolk, 2 Mylne & Keen, 59.

*Thomas W. Pierce, Thomas S. Butler* and *William S. Windle*, for appellee, were not heard, but cited Baker's App., 115 Pa. 590, Howe's App., 126 Pa. 241, and Woelpper's App., 126 Pa. 572.

PER CURIAM, February 19, 1900:

We think that the learned auditor in the court below has correctly interpreted the provisions of the will of the testator in his supplemental report.   The will certainly did give to the executor, who was also the brother of Theodore Beaumont, an absolute discretion to devote as much of Theodore's one half of the residue of the estate to the maintenance of Theodore and his children as he chose.   And as if to insure the absolute character of the discretion entrusted to Rush, the testator added another provision, equally explicit, in which he positively and expressly declares that the trustee shall not be held accountable to any of the children of Theodore "for any part of the trust property which he may in his discretion pay over or convey to my said son Theodore Beaumont in his lifetime."   The words used are entirely free of doubt as to their meaning and, therefore, need no rule of interpretation to be applied to them to explain their meaning.   It was perfectly competent to the testator to make such a provision; there is nothing in it contrary to law or public policy, and we see no reason why it should not be sustained.   The reasons for this conclusion are well expressed by the auditor in his supplemental report, and without any unnecessary repetition of them here we affirm the decree for the reasons stated in that report.

Decree affirmed and appeal dismissed at the cost of the appellants.